# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **TIMOTHY JAMES LANDWEHR**<br>4845 Riverlake Drive<br>Duluth, GA 30097<br><br>**GARY CLARK**<br>8315 Horseshoe Bar Road<br>Loomis, CA 95650<br><br>**CHERYL GATES**<br>7805 Woodland Drive<br>Black Hawk, SD 57718<br><br>**WALTER THARP**<br>3579 E. Foothill Blvd.<br>Pasadena, CA 91107<br><br>**JOHN REED**<br>87 Legacy Way<br>Irvine, CA 92602<br><br>**JAMES WOODCOCK**<br>18 Campbell Court<br>Novato, CA 94947<br><br>**GROSVENOR NICHOLS**<br>3611 Arden Creek Road<br>Sacramento, CA 95864<br><br>**GULSHAN GARG**<br>1036 Thornwood Street<br>Glendale, CA 91206<br><br>**JOSEPH FIERRO**<br>300 E. 74th Street, 18 A&B<br>New York, NY 10021<br><br>**TAMMY FLAHARTY**<br>21 Pepperdine Circle<br>Baltimore, MD 21228<br><br>**LEONARD ISRAEL**<br>26612 Paseo Callado<br>San Juan Capistrano, CA 92675 | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br><br>**Case No. 1:09-cv-00716**<br>**Honorable Ricardo Urbina** |

EXHIBIT I TO DEC. 2, 2009 STIPULATION

<table>
<tbody>
<tr><td>

**JAMES BANKS**
333 Anita Drive
Pasadena, CA 91105

**THOMAS WAGNER**
2678 West Creek Drive
Frisco, TX 75034

**MARK MOZILO**
710 S. Hudson Avenue
Pasadena, CA 91106

**LEE GARBOWITZ**
3121 Oakdell Lane
Studio City, CA 91604.

**JOHN JOHNSTON**
23 Champney Place
Laguna Niguel, CA 92677

**DREW WATERHOUSE**
21 Calle Gaulteria
San Clemente, CA 92673

**ASHWIN ADARKAR**
270 South Arroyo Blvd.
Pasadena, CA 91105

**GREGORY S. SOSNOVICH**
5 Hamill Lane
Clarendon Hills, IL 60514

        **Plaintiffs,**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION
(FDIC) as receiver for IndyMac Bank, FSB,
IndyMac Federal Bank, FSB, and IndyMac Bank FSB's
Employee Benefits Fiduciary Committee,
ONEWEST BANK, FSB., INDYMAC RESOURCES,**

</td><td>

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

</td></tr>
</tbody>
</table>

---

*Landwehr, et al., v. FDIC, et al.*, Case No. 1:09-cv-00716; Second Amended Complaint       Page 2

EXHIBIT I TO DEC. 2, 2009 STIPULATION

INC., and DOES 1-50,[1]        )
                               )
            Defendants.        )
                               )
_____)

, ONEWEST BANK,        )
FSB.,

## SECOND AMENDED COMPLAINT FOR RESTITUTION, DECLARATORY, INJUNCTIVE, AND MONETARY RELIEF

### Preliminary Statement

1.      This is a civil action under 12 U.S.C. §1821, *et seq.,* as amended by the Financial

Institutions Reform, Recovery, and Enforcement Act (FIRREA), under the Worker Adjustment and

Retraining Notification Act, 29 U.S.C. § 2101, *et seq.* (the "WARN Act"), under the California

WARN Act, Cal. Labor Code § 1400 et seq. (the "California WARN Act"), under the Employee

Retirement Income Security Act, 29 U.S.C. §1001, *et seq.* ("ERISA"), and under the contract law of

the State of California, which governed the employment relationship between the Plaintiffs and

their former joint employers, IndyMac Bank, FSB, and IndyMac Resources, Inc. (collectively,

"IndyMac"). All facts relevant to this case sprung from the relationship between IndyMac and

Plaintiffs. In this action, Plaintiffs seek to recover severance, deferred quarterly, non-discretionary

"bonus" compensation, compensation pursuant to an ERISA Deferred Compenation Plan, unpaid

WARN compensation, plus interest, penalties where appropriate, and other compensation they are

owed by Defendants. Plaintiffs further seek a declaration that Defendants cannot claim any debt

---

[1] The FDIC is a federal agency. The FDIC as receiver specifically for IndyMac Bank FSB's Employee Benefits Fiduciary Committee is intended to be named only with respect to the Deferred Compensation Plan addressed *infra.* Defendants IndyMac Resources, Inc., and OneWest Bank, FSB, are located at 888 E. Walnut Street, Pasadena, CA 91101. OneWest Bank, FSB, is listed exclusively as a successor corporation which may be liable for the actions of its predecessors under successor liabilities theories, or, in the alternative, is only a party regarding Plaintiffs' request for injuctive/declaratory relief, concerning Promissory Notes. *See infra.* Wherever the term "Defendants" is used in this Complaint, this understanding should be imputed.

*Landwehr, et al., v. FDIC, et al.,* Case No. 1:09-cv-00716; Second Amended Complaint          Page 3

EXHIBIT I TO DEC. 2, 2009 STIPULATION

owed to them by Plaintiffs as a result of "retention loans" paid to Plaintiffs which ceased to exist prior to the FDIC taking over IndyMac and its successor, IndyMac Federal Bank, FSB.

### Jurisdiction and Venue

2.      This Court has jurisdiction over the FDIC claims pursuant to 12 U.S.C. § 1821(d)(6)(A) and 28 U.S.C. §1331, and over the federal WARN and ERISA claims pursuant to 28 U.S.C. §1331 as well. Venue is proper in this court under 12 U.S.C. § 1821(d)(6)(A) as well. Under 28 U.S.C. §1367, the Court should take supplemental jurisdiction over the Plaintiffs' contract claims, California WARN claims, and claims for declaratory and injunctive relief against all Defendants.

### Parties

3.      Plaintiff Timothy Landwehr is a citizen of the State of Georgia who resides at 4845 Riverlake Drive, Duluth, GA 30097. Plaintiff was an employee of IndyMac Resources, Inc., and IndyMac Bank, FSB, before the latter failed and went into FDIC receivership, and remained an employee of IndyMac Federal Bank, FSB, after IndyMac Bank went into receivership, until his involuntary termination in a layoff by Defendants. Mr. Landwehr's joint employers promised him severance and other compensation equal to $223,166.66, which he was never paid. IndyMac Bank provided Mr. Landwehr a "retention loan" during his employment of $131,813, which was to be offset by his severance and other compensation, and which was, in any case, forgiven in its entirety by IndyMac Bank and IndyMac Resources, Inc., before the FDIC takeover. Yet, on or about March 19, 2009, Defendants notified Mr. Landwehr that he is expected to repay the nullified "retention loan" with ever-accruing interest, without offsetting it against severance or other compensation still owed to Plaintiff still owed to Plaintiff.

EXHIBIT I TO DEC. 2, 2009 STIPULATION

4.      Plaintiff Tammy Flaharty is a citizen of the State of Maryland who resides at 21 Pepperdine Circle, Baltimore, MD 21228. Plaintiff was an employee of IndyMac Resources, Inc., and IndyMac Bank, FSB, before the latter failed and went into FDIC receivership, and remained an employee of IndyMac Federal Bank, FSB, after IndyMac Bank went into receivership, until his involuntary termination in a layoff by Defendants. Ms. Flaharty's joint employers promised her severance and other compensation equal to $300,533, which she was never paid. IndyMac Bank provided Ms. Flaharty a "retention loan" during her employment of $99,750, which was to be offset by her severance and other compensation, and which was, in any case, forgiven in its entirety by IndyMac Bank and IndyMac Resources, Inc., before the FDIC takeover. Yet, on or about March 19, 2009, Defendants notified Ms. Flaharty that she is expected to repay the nullified "retention loan" with ever-accruing interest, without offsetting it against severance or other compensation still owed to Plaintiff.

5.      Plaintiff Cheryl Gates is a citizen of the State of South Dakota who resides at 7805 Woodland Drive, Black Hawk, SD 57718. Plaintiff was an employee of IndyMac Resources, Inc., and IndyMac Bank, FSB, before the latter failed and went into FDIC receivership, and remained an employee of IndyMac Federal Bank, FSB, after IndyMac Bank went into receivership, until his involuntary termination in a layoff by Defendants. Ms. Gates' joint employers promised her severance and other compensation equal to $189,000, which she was never paid. IndyMac Bank provided Ms. Gates a "retention loan" during her employment of $142,500, which was to be offset by her severance and other compensation, and which was, in any case, forgiven in its entirety by IndyMac Bank and IndyMac Resources, Inc., before the FDIC takeover. Yet, on or about March 19, 2009, Defendants notified Ms. Gates that she is expected to repay the nullified "retention loan" with

ever-accruing interest, without offsetting it against severance or other compensation still owed to Plaintiff.

6.      Plaintiff James Woodcock is a citizen of the State of California who resides at 18 Campbell Court, Novato, CA 94947. Plaintiff was an employee of IndyMac Resources, Inc., and IndyMac Bank, FSB, before the latter failed and went into FDIC receivership, and remained an employee of IndyMac Federal Bank, FSB, after IndyMac Bank went into receivership, until his involuntary termination in a layoff by Defendants. Mr. Woodcock's joint employers promised him severance and other compensation equal to $192,889, which he was never paid. IndyMac Bank provided Mr. Woodcock a "retention loan" during his employment of $106,875, which was to be offset by his severance and other compensation, and which was, in any case, forgiven in its entirety by IndyMac Bank and IndyMac Resources, Inc., before the FDIC takeover. Yet, on or about March 19, 2009, Defendants notified Mr. Woodcock that he is expected to repay the nullified "retention loan" with ever-accruing interest, without offsetting it against severance or other compensation still owed to Plaintiff.

7.      Plaintiff Grosvenor Nichols is a citizen of the State of California who resides at 3611 Arden Creek Road, Sacramento, CA 95864. Plaintiff was an employee of IndyMac Resources, Inc., and IndyMac Bank, FSB, before the latter failed and went into FDIC receivership, and remained an employee of IndyMac Federal Bank, FSB, after IndyMac Bank went into receivership, until his involuntary termination in a layoff by Defendants. Mr. Nichols' joint employers promised him severance and other compensation equal to $463,890, which he was never paid. IndyMac Bank provided Mr. Nichols a "retention loan" during his employment of $226,575, which was to be offset by his severance and other compensation, and which was, in any case, forgiven in its entirety by

EXHIBIT I TO DEC. 2, 2009 STIPULATION

IndyMac Bank and IndyMac Resources, Inc., before the FDIC takeover. Yet, on or about March 19, 2009, Defendants notified Mr. Nichols that he is expected to repay the nullified "retention loan" with ever-accruing interest, without offsetting it against severance or other compensation still owed to Plaintiff.

8.      Plaintiff Walter Tharp is a citizen of the State of California who resides at 3579 E. Foothill Blvd., Pasadena, CA 91107. Plaintiff was an employee of IndyMac Resources, Inc., and IndyMac Bank, FSB, before the latter failed and went into FDIC receivership, and remained an employee of IndyMac Federal Bank, FSB, after IndyMac Bank went into receivership, until his involuntary termination in a layoff by Defendants. Mr. Tharp's joint employers promised him severance and other compensation equal to $314,503, which he was never paid. IndyMac Bank provided Mr. Tharp a "retention loan" during his employment of $178,000, which was to be offset by his severance and other compensation, and which was, in any case, forgiven in its entirety by IndyMac Bank and IndyMac Resources, Inc., before the FDIC takeover. Yet, on or about March 19, 2009, Defendants notified Mr. Tharp that he is expected to repay the nullified "retention loan" with ever-accruing interest, without offsetting it against severance or other compensation still owed to Plaintiff.

9.      Plaintiff Thomas Wagner is a citizen of the State of Texas who resides at 2678 West Creek Drive, Frisco, TX 75034. Plaintiff was an employee of IndyMac Resources, Inc., and IndyMac Bank, FSB, before the latter failed and went into FDIC receivership, and remained an employee of IndyMac Federal Bank, FSB, after IndyMac Bank went into receivership, until his involuntary termination in a layoff by Defendants. Mr. Wagner's joint employers promised him severance and other compensation equal to $422,302, which he was never paid. IndyMac Bank

EXHIBIT I TO DEC. 2, 2009 STIPULATION

provided Mr. Wagner a "retention loan" during his employment of $178,125, which was to be offset by his severance and other compensation, and which was, in any case, forgiven in its entirety by IndyMac Bank and IndyMac Resources, Inc., before the FDIC takeover. Yet, on or about March 19, 2009, Defendants notified Mr. Wagner that he is expected to repay the nullified "retention loan" with ever-accruing interest, without offsetting it against severance or other compensation still owed to Plaintiff.

10.     Plaintiff Leonard Israel is a citizen of the State of California who resides at 26612 Paseo Callado, San Juan Capistrano, CA 92675. Plaintiff was an employee of IndyMac Resources, Inc., and IndyMac Bank, FSB, before the latter failed and went into FDIC receivership, and remained an employee of IndyMac Federal Bank, FSB, after IndyMac Bank went into receivership, until his involuntary termination in a layoff by Defendants. Mr. Israel's joint employers promised him severance and other compensation equal to $370,215, which he was never paid. IndyMac Bank provided Mr. Israel a "retention loan" during his employment of $178,125, which was to be offset by his severance and other compensation, and which was, in any case, forgiven in its entirety by IndyMac Bank and IndyMac Resources, Inc., before the FDIC takeover. Yet, on or about March 19, 2009, Defendants notified Mr. Israel that he is expected to repay the nullified "retention loan" with ever-accruing interest, without offsetting it against severance or other compensation still owed to Plaintiff.

11.     Plaintiff John Reed is a citizen of the State of California who resides at 87 Legacy Way, Irvine, CA 92602. Plaintiff was an employee of IndyMac Resources, Inc., and IndyMac Bank, FSB, before the latter failed and went into FDIC receivership, and remained an employee of IndyMac Federal Bank, FSB, after IndyMac Bank went into receivership, until his involuntary

termination in a layoff by Defendants. Mr. Reed's joint employers promised him severance and other compensation equal to $221,409, which he was never paid. IndyMac Bank provided Mr. Reed a "retention loan" during his employment of $106,875, which was to be offset by his severance and other compensation, and which was, in any case, forgiven in its entirety by IndyMac Bank and IndyMac Resources, Inc., before the FDIC takeover. Yet, on or about March 19, 2009, Defendants notified Mr. Reed that he is expected to repay the nullified "retention loan" with ever-accruing interest, without offsetting it against severance or other compensation still owed to Plaintiff.

12.     Plaintiff Mark Mozilo is a citizen of the State of California who resides at 710 S. Hudson Avenue, Pasadena, CA 91106. Plaintiff was an employee of IndyMac Resources, Inc., and IndyMac Bank, FSB, before the latter failed and went into FDIC receivership, and remained an employee of IndyMac Federal Bank, FSB, after IndyMac Bank went into receivership, until his involuntary termination in a layoff by Defendants. Mr. Mozilo's joint employers promised him severance and other compensation equal to $641,250, which he was never paid. IndyMac Bank provided Mr. Mozilo a "retention loan" during his employment of $320,625, which was to be offset by his severance and other compensation, and which was, in any case, forgiven in its entirety by IndyMac Bank and IndyMac Resources, Inc., before the FDIC takeover. Yet, on or about March 19, 2009, Defendants notified Mr. Mozilo that he is expected to repay the nullified "retention loan" with ever-accruing interest, without offsetting it against severance or other compensation still owed to Plaintiff.

13.     Plaintiff Gary Clark is a citizen of the State of California who resides at 8315 Horseshoe Bar Road, Loomis, CA 95650. Plaintiff was an employee of IndyMac Resources, Inc., and IndyMac Bank, FSB, before the latter failed and went into FDIC receivership, and remained an

EXHIBIT I TO DEC. 2, 2009 STIPULATION

employee of IndyMac Federal Bank, FSB, after IndyMac Bank went into receivership, until his involuntary termination in a layoff by Defendants. Mr. Clark's joint employers promised him severance and other compensation equal to $466,595, which he was never paid. IndyMac Bank provided Mr. Clark a "retention loan" during his employment of $195,938, which was to be offset by his severance and other compensation, and which was, in any case, forgiven in its entirety by IndyMac Bank and IndyMac Resources, Inc., before the FDIC takeover. Yet, on or about March 19, 2009, Defendants notified Mr. Clark that he is expected to repay the nullified "retention loan" with ever-accruing interest, without offsetting it against severance or other compensation still owed to Plaintiff.

14.     Plaintiff Gulshan Garg is a citizen of the State of California who resides at 1036 Thornwood Street, Glendale, CA 91206. Plaintiff was an employee of IndyMac Resources, Inc., and IndyMac Bank, FSB, before the latter failed and went into FDIC receivership, and remained an employee of IndyMac Federal Bank, FSB, after IndyMac Bank went into receivership, until his involuntary termination in a layoff by Defendants. Mr. Garg's joint employers promised him severance and other compensation equal to $735,126, which he was never paid. IndyMac Bank provided Mr. Garg a "retention loan" during his employment of $267,188, which was to be offset by his severance and other compensation, and which was, in any case, forgiven in its entirety by IndyMac Bank and IndyMac Resources, Inc., before the FDIC takeover. Yet, on or about March 19, 2009, Defendants notified Mr. Garg that he is expected to repay the nullified "retention loan" with ever-accruing interest, without offsetting it against severance or other compensation still owed to Plaintiff.

---

EXHIBIT I TO DEC. 2, 2009 STIPULATION

15.    Plaintiff James Banks is a citizen of the State of California who resides at 333 Anita Drive, Pasadena, CA 91105. Plaintiff was an employee of IndyMac Resources, Inc., and IndyMac Bank, FSB, before the latter failed and went into FDIC receivership, and remained an employee of IndyMac Federal Bank, FSB, after IndyMac Bank went into receivership, until his involuntary termination in a layoff by Defendants. Mr. Banks' joint employers promised him severance and other compensation equal to $499,350, which he was never paid. IndyMac Bank provided Mr. Banks a "retention loan" during his employment of $213,750, which was to be offset by his severance and other compensation, and which was, in any case, forgiven in its entirety by IndyMac Bank and IndyMac Resources, Inc., before the FDIC takeover. Yet, on or about March 19, 2009, Defendants notified Mr. Banks that he is expected to repay the nullified "retention loan" with ever-accruing interest, without offsetting it against severance or other compensation still owed to Plaintiff.

16.    Plaintiff Joseph Fierro is a citizen of the State of New York who resides at 300 E. 74th Street, New York, NY 10021. Plaintiff was an employee of IndyMac Resources, Inc., and IndyMac Bank, FSB, before the latter failed and went into FDIC receivership, and remained an employee of IndyMac Federal Bank, FSB, after IndyMac Bank went into receivership, until his involuntary termination in a layoff by Defendants. Mr. Fierro's joint employers promised him severance and other compensation equal to $440,000, which he was never paid. IndyMac Bank provided Mr. Fierro a "retention loan" during his employment of $228,000, which was to be offset by his severance and other compensation, and which was, in any case, forgiven in its entirety by IndyMac Bank and IndyMac Resources, Inc., before the FDIC takeover. Yet, on or about March 19, 2009, Defendants notified Mr. Fierro that he is expected to repay the nullified "retention loan" with

EXHIBIT I TO DEC. 2, 2009 STIPULATION

ever-accruing interest, without offsetting it against severance or other compensation still owed to Plaintiff.

17.     Plaintiff Lee Garbowitz is a citizen of the State of California who resides at 3121 Oakdell Lane, Studio City, California 91604. Plaintiff was an employee of IndyMac Resources, Inc., and IndyMac Bank, FSB, before the latter failed and went into FDIC receivership, and remained an employee of IndyMac Federal Bank, FSB, after IndyMac Bank went into receivership, until his involuntary termination in a layoff by Defendants. Mr. Garbowitz's joint employers promised him severance and other compensation equal to $247,000 which he was never paid. IndyMac Bank provided Mr. Garbowitz a "retention loan" during his employment of $187,131.50 (including accrued interest), which was to be offset by his severance and other compensation, and which was, in any case, forgiven in its entirety by IndyMac Bank and IndyMac Resources, Inc., before the FDIC takeover. Yet, on or about March 19, 2009, Defendants notified Mr. Garbowitz that he is expected to repay the nullified "retention loan" with ever-accruing interest, without offsetting it against severance or other compensation still owed to Plaintiff still owed to Plaintiff.

18.     Plaintiff Drew Waterhouse is a citizen of the State of California who resides at 21 Calle Gaulteria, San Clemente, CA 92673. Plaintiff was an employee of IndyMac Resources, Inc., and IndyMac Bank, FSB, before the latter failed and went into FDIC receivership, and remained an employee of IndyMac Federal Bank, FSB, after IndyMac Bank went into receivership, until his involuntary termination in a layoff by Defendants. Mr. Waterhouse's joint employers promised him severance and other compensation equal to $163,360, which he was never paid. IndyMac Bank provided Mr. Waterhouse a "retention loan" during his employment of $85,500, which was to be offset by his severance and other compensation, and which was, in any case, forgiven in its entirety

EXHIBIT I TO DEC. 2, 2009 STIPULATION

by IndyMac Bank and IndyMac Resources, Inc., before the FDIC takeover. Yet, on or about March 19, 2009, Defendants notified Mr. Waterhouse that he is expected to repay the nullified "retention loan" with ever-accruing interest, without offsetting it against severance or other compensation still owed to Plaintiff.

19.    Plaintiff John Johnston is a citizen of the State of California who resides at 23 Champney Place, Laguna Niguel, CA 92677. Plaintiff was an employee of IndyMac Resources, Inc., and IndyMac Bank, FSB, before the latter failed and went into FDIC receivership, and remained an employee of IndyMac Federal Bank, FSB, after IndyMac Bank went into receivership, until his involuntary termination in a layoff by Defendants. Mr. Johnston's joint employers promised him severance and other compensation equal to $500,000, which he was never paid. IndyMac Bank provided Mr. Johnston a "retention loan" during his employment of $356,250, which was to be offset by his severance and other compensation, and which was, in any case, forgiven in its entirety by IndyMac Bank and IndyMac Resources, Inc., before the FDIC takeover. Yet, on or about March 19, 2009, Defendants notified Mr. Johnston that he is expected to repay the nullified "retention loan" with ever-accruing interest, without offsetting it against severance or other compensation still owed to Plaintiff.

20.    Plaintiff Ashwin Adarkar is a citizen of the State of California who resides at 270 South Arroyo Blvd., Pasadena, CA 91105. Plaintiff was an employee of IndyMac Resources, Inc., and IndyMac Bank, FSB, before the latter failed and went into FDIC receivership, and remained an employee of IndyMac Federal Bank, FSB, after IndyMac Bank went into receivership, until his involuntary termination in a layoff by Defendants. Mr. Adarkar's joint employers promised him severance and other compensation equal to $863,734 (including, but not limited to, compensation

EXHIBIT I TO DEC. 2, 2009 STIPULATION

that was part of a Deferred Compensation Plan under ERISA), which he was never paid. IndyMac Bank provided Mr. Adarkar a "retention loan" during his employment of $271,890, which was to be offset by his severance and other compensation, and which was, in any case, forgiven in its entirety by IndyMac Bank and IndyMac Resources, Inc., before the FDIC takeover. Yet, on or about March 19, 2009, Defendants notified Mr. Adarkar that he is expected to repay the nullified "retention loan" with ever-accruing interest, without offsetting it against severance or other compensation still owed to Plaintiff.

21.     Plaintiff Gregory S. Sosnovich is a citizen of the State of Illinois who resides at 5 Hamill Lane, Clarendon Hills, IL 60514. Plaintiff was an employee of IndyMac Resources, Inc., and IndyMac Bank, FSB, before the latter failed and went into FDIC receivership, and remained an employee of IndyMac Federal Bank, FSB, after IndyMac Bank went into receivership, until his involuntary termination in a layoff by Defendants. Mr. Sosnovich's joint employers promised him severance and other compensation equal to $478,886.34, which he was never paid. IndyMac Bank provided Mr. Sosnovich a "retention loan" during his employment of $213,750, which was to be offset by his severance and other compensation, and which was, in any case, forgiven in its entirety by IndyMac Bank and IndyMac Resources, Inc., before the FDIC takeover. Yet, on or about March 19, 2009, Defendants notified Mr. Sosnovich that he is expected to repay the nullified "retention loan" with ever-accruing interest, without offsetting it against severance or other compensation still owed to Plaintiff.

22.     Defendant FDIC is the United States Government agency authorized to take into receivership banks that fail, guided by regulations including 12 U.S.C. §1821, *et seq.*, as amended by FIRREA. IndyMac Bank, FSB, was a corporation with its principal place of business at 888 E.

EXHIBIT I TO DEC. 2, 2009 STIPULATION

Walnut Street, Pasadena, CA 91101, which employed Plaintiffs. IndyMac Bank FSB's Employee Benefits Fiduciary Committee was the Plan Administrator for the IndyMac Bank Deferred Compensation Plan. The FDIC was appointed receiver of IndyMac Bank, FSB, on July 11, 2008. Upon information and belief, the FDIC receivership included control of the IndyMac Bank FSB Employee Benefits Fiduciary Committee. Likewise, IndyMac Federal Bank, FSB, was, upon information and belief, a corporation created by the FDIC on July 11, 2008, to continue IndyMac's operations after the failure of IndyMac Bank, FSB. Upon information and belief, IndyMac Federal Bank, FSB, which employed Plaintiffs, had its principal place of business in Pasadena, California. Upon information and belief, the FDIC was appointed receiver of IndyMac Federal Bank, FSB, on or about March 19, 2009. The FDIC is jointly and severally liable for all claims in this matter.

23.    Defendant IndyMac Resources, Inc., is a corporation with its principal place of business at 888 E. Walnut Street, Pasadena, CA 91101, which employed Plaintiffs. IndyMac Resources, Inc., is jointly and severally liable for all claims.

24.    Defendant OneWest Bank, FSB, is a corporation with its principal place of business at 888 E. Walnut Street, Pasadena, CA 91101. OneWest Bank, FSB, purchased IndyMac Federal Bank, FSB, on or about March 19, 2009, and is, upon information and belief, its successor in ways relevant to this suit, *e.g.*, based on a de facto merger, and/or based on a continuity of operations between OneWest and IndyMac. In particular, among other things, upon information and belief, OneWest has a continuity of management, continuity of personnel, continuity of physical location, and continuity of assets and general business operations with the former IndyMac. Upon information and belief, OneWest continued to do business using the IndyMac (or IndyMac Resources) name in certain respects. OneWest also, upon information and belief, entered into one

EXHIBIT I TO DEC. 2, 2009 STIPULATION

or more joint ventures with the FDIC as IndyMac's receiver. Moreover, in the alternative, even if OneWest was a mere purchaser of IndyMac's assets from the FDIC, the portion of this suit relating to declaratory/injuctive relief concerns OneWest, upon information and belief. Plaintiffs are informed and believe that OneWest has claimed the authority to forgive, as to OneWest managers who were formerly IndyMac managers, IndyMac "Promissory Notes" virtually identical those Plaintiffs seek to have the Court declare void in this suit (as described *infra*). OneWest Bank, FSB, is jointly and severally liable for all claims as a successor to IndyMac, or in the alternative, is a proper Defendant as to the declaratory/injunctive relief sought herein regarding Promissory Notes.

25.     Defendants Does 1-50, inclusive, are sued herein under fictitious names. Their true names and capacities are unknown to Plaintiffs. When their true names and capacities are ascertained, Plaintiffs will amend this complaint by inserting their true names and capacities herein. Plaintiffs are informed and believe and thereon allege that each of the fictitiously-named Defendants is responsible in some manner for the occurrences herein alleged, and that the damages of Plaintiffs and the putative class members herein alleged were proximately caused by such Defendants.

26.     Plaintiffs are informed, believe, and thereon allege that each of the Defendants herein was, at all times relevant to this action, the agent, employee, representative partner, and/or joint venturer of the remaining Defendants and was acting within the course and scope of the relationship. Plaintiffs are further informed, believe, and thereon allege that each of the Defendants herein gave consent to, ratified, and authorized the acts alleged herein to the remaining Defendants.

**Factual Allegations**

EXHIBIT I TO DEC. 2, 2009 STIPULATION

or more joint ventures with the FDIC as IndyMac's receiver. Moreover, in the alternative, even if OneWest was a mere purchaser of IndyMac's assets from the FDIC, the portion of this suit relating to declaratory/injuctive relief concerns OneWest, upon information and belief. Plaintiffs are informed and believe that OneWest has claimed the authority to forgive, as to OneWest managers who were formerly IndyMac managers, IndyMac "Promissory Notes" virtually identical those Plaintiffs seek to have the Court declare void in this suit (as described *infra*). OneWest Bank, FSB, is jointly and severally liable for all claims as a successor to IndyMac, or in the alternative, is a proper Defendant as to the declaratory/injunctive relief sought herein regarding Promissory Notes.

25.     Defendants Does 1-50, inclusive, are sued herein under fictitious names. Their true names and capacities are unknown to Plaintiffs. When their true names and capacities are ascertained, Plaintiffs will amend this complaint by inserting their true names and capacities herein. Plaintiffs are informed and believe and thereon allege that each of the fictitiously-named Defendants is responsible in some manner for the occurrences herein alleged, and that the damages of Plaintiffs and the putative class members herein alleged were proximately caused by such Defendants.

26.     Plaintiffs are informed, believe, and thereon allege that each of the Defendants herein was, at all times relevant to this action, the agent, employee, representative partner, and/or joint venturer of the remaining Defendants and was acting within the course and scope of the relationship. Plaintiffs are further informed, believe, and thereon allege that each of the Defendants herein gave consent to, ratified, and authorized the acts alleged herein to the remaining Defendants.

### Factual Allegations

---

*Landwehr, et al., v. FDIC, et al.*, Case No. 1:09-cv-00716; Second Amended Complaint                Page 16

EXHIBIT I TO DEC. 2, 2009 STIPULATION

27.     Plaintiffs worked for IndyMac Bank, FSB, and IndyMac Resources, Inc. (hereafter, collectively, "IndyMac" or "the companies"), for years as executives, growing the companies to have a shared workforce of 10,000 strong by 2007.

28.     To recruit and retain the most qualified managers, IndyMac promised its executives generous severance packages, which they would lose if they voluntarily left the company, but which they would collect in the event of an involuntary termination, unless such termination was related to non-performance or misconduct. Plaintiffs relied upon these promises in deciding to stay with IndyMac through thick and thin.

29.     Likewise, to recruit and retain top professionals, IndyMac promised quarterly, non-discretionary "bonuses" as a form of deferred compensation, constituting a significant element of its' managers' compensation. Plaintiffs were entitled to receive these quarterly payments, or a prorated share of such, for all periods that they remained employed with IndyMac and performed satisfactorily.

30.     In addition, at least one Plaintiff, Ashwin Adarkar, was provided with a "Deferred Compensation Plan" wherein some of his salary was loaned back to IndyMac with a promised repayment and an annual rate of return at a later date (*i.e.,* upon termination, other special circumstances, or upon retirement), subject to the Employee Retirement Income Security Act of 1974.

31.     The decline of the mortgage lending industry nationwide beginning in 2007 hit IndyMac hard, and, though IndyMac experienced layoffs – in which Plaintiffs could have been involuntarily terminated or retired, qualifying them to receive their severance – Plaintiffs were induced to stay with IndyMac to try to help save the companies.

---

*Landwehr, et al., v. FDIC, et al.*, Case No. 1:09-cv-00716; Second Amended Complaint                    Page 17

EXHIBIT I TO DEC. 2, 2009 STIPULATION

32.     As a further incentive to stay with IndyMac and try to build the companies back to solvency, or at least minimize the losses to the companies' depositors and investors, IndyMac's top employees, including Plaintiffs, were offered "retention loans." They executed Promissory Notes, which were contracts expressly formed under the law of the State of California, to receive compensation which would be set-off against their severance and other compensation at the end of their employment. It was anticipated by the contracting parties that the "retention loans" could also be forgiven entirely if the company became profitable again (*i.e.*, with a return on average equity of 12% or higher for any quarter).

33.     Though Plaintiffs hesitated to accept this additional compensation under the Promissory Notes if they would be required to repay it, they did accept the compensation based upon IndyMac's assurances (by, among others, Jim Barbour, IndyMac's Senior Vice President and Chief Meritocracy Officer) that the money would only need to be repaid as a set-off against severance, and would not be due in the event of a termination without cause. No Plaintiff promised or intended to promise to pay back the amounts in the "retention loans" if their severance was summarily denied and they were laid off, and Plaintiffs would not have executed the "Promissory Notes" if such a condition had existed. Simply put, no Plaintiff agreed to accept or repay money from IndyMac without being paid severance.

34.     As consideration for the sums paid as "retention loans," Plaintiffs remained with the companies and worked diligently to save IndyMac from failure, and to minimize losses to depositors and investors.

---

*Landwehr, et al., v. FDIC, et al.*, Case No. 1:09-cv-00716; Second Amended Complaint                    Page 18

EXHIBIT I TO DEC. 2, 2009 STIPULATION

35.    On or shortly before July 7, 2008, IndyMac notified Plaintiffs that IndyMac Bank,

FSB's failure was imminent and that the FDIC was involved and was going to be taking over

IndyMac.

36.    Still prior to the FDIC takeover, on July 7, 2008 and July 8, 2008, Jennifer Pikoos,

IndyMac's First Vice President of Compensation & Benefits, and Rayman Mathoda, IndyMac

Resources, Inc.'s Chief Executive Officer, and IndyMac Bank, FSB's Executive Vice President and

Chief Administrative Officer, provided Plaintiffs with a document entitled, "July 2008 Indymac

Bank Restructuring Frequently Asked Questions Specialty List," which stated, under the

subheading, "Questions About Retention Loans:"

> **Q: Do I have to re-pay the retention loan I received?**
> A: No. Under the Promissory Note you signed prior to receipt of the
> loan, the loan principal balance and accrued interest are not
> accelerated (i.e., due) in the event of an involuntary termination
> without cause (i.e., a layoff).
> **Q: How does this impact my 2008 income and taxes?**
> A: As a result of the above, the retention loan balance will be part of
> your 2008 W2 income. This means that you will be responsible for
> any tax obligation on this amount.

Indymac Resources, Inc., Senior Vice President Annissa Deshpande was a party to this document

as well.

37.    On July 7, 2008, Ms. Mathoda, who originally signed Plaintiffs' employment

contracts with IndyMac and who notified Plaintiffs of their impending layoff with full authority to

speak for the companies, told Plaintiffs in an email that the retention "loans" "were designed so that

they are not due back in the event of a termination without cause (i.e., layoff)....We will not be

asking for the retention loans back...but will W2 them (so they will be included on people's income

for 2008). Each individual will be responsible for paying income taxes due on the loan amounts

themselves." As such, on or prior to the date of this communication, Plaintiffs' entitlement to keep the "retention loan" payments had vested.

38.    On July 9, 2008, Ms. Pikoos, on behalf of IndyMac, corresponded with Plaintiff Gary Clark, and informed him that he could resign and take retirement benefits, but might therefore be required to repay the "retention loan" – which, as a matter of policy, he was *not* otherwise required to repay.

39.    On July 11, 2008, Indymac Bank, FSB, fell victim to the recession, notwithstanding the successes of individual performers, and the FDIC was appointed as the Bank's receiver.

40.    Plaintiffs never executed any agreements that involved paying any money to IndyMac, Indymac Federal Bank, or the FDIC, after IndyMac Bank, FSB, failed on July 11, 2008.

41.    Beginning on July 11, 2008, Plaintiffs were employed by IndyMac Federal Bank, FSB, for varying lengths of time.

42.    At no time before or after July 11, 2008 was any Plaintiff notified by Defendants of any deficiency in performance or conduct which would justify a termination for cause or be used as a premise for denying severance or forcing repayment of the compensation paid under the Promissory Notes.

43.    Defendants acted as a "single employer" at all relevant times for the purposes of the WARN Act, and maintained facilities across the country that qualified for protection under the WARN Act. Though many Plaintiffs received at least 60-days' notice and compensation prior to the effective date of their termination, as required under the WARN Act, Plaintiffs Gulshan Garg and Grove Nichols did not.

44.    Each Plaintiff had some form of employment agreement which, in its original form

and/or as modified after the FDIC takeover, ensured that he/she would be paid prorated portions of the non-discretionary "bonuses" (*i.e.*, deferred compensation) for satisfactory performance during any time they were employed in the third and fourth quarters of 2008. For example, Leonard Israel's Employment Agreement with IndyMac, dated January 29, 2008, states, in amending Section 4.2 of his original Employment Agreement, "Unless otherwise determined by Employer, any annual or quarterly bonus shall be prorated to the extent that Employee is employed for less than the full bonus period."

45.     IndyMac and IndyMac Federal Bank, FSB, prior to the end of Plaintiffs' employment, never "otherwise determined" that they would be ineligible for the Q3 and/or Q4 prorated bonuses, *i.e.*, IndyMac, IndyMac Federal Bank, and the FDIC never notified Plaintiffs that they would not be paid prorated bonuses. As such, Plaintiffs stayed with the companies based on the promise that they would be receiving bonuses when they performed satisfactorily, which they all accomplished. Had they been notified that they would not receive their promised bonus pay, they would not have had the incentive to remain employed. Clearly, though, Defendants, including the FDIC, after July 11, 2008, sought to entice the top IndyMac performers to continue working, to minimize the company's and Government's losses.

46.     Several days prior to July 11, 2008, Ms. Mathoda told Plaintiffs (or some of them) that their last day of work and employment would be September 15, 2008, stating, "Between now and then, you will continue to receive your regular pay and your benefits will continue . . . . You will also receive your actual incentive earned during that time, paid on the existing schedule."

47.     After the takeover, IndyMac Federal Bank, FSB, and the FDIC continually promised that the Plaintiffs' compensation and benefits would remain intact. In an "FDIC

Notification to All Employees," dated July 11, 2008, Defendants stated, "Currently, we do not anticipate changes to your pay or benefits coverage . . . You play an important role in this mission of the FDIC and we will be relying on your expertise to assist us in fulfilling our tasks. Your hard work and dedication during this challenging time is greatly appreciated."

48.     Again, on July 13, 2008, John Bovenzi, a top executive of the FDIC, and the Chief Executive Officer of the newly-constituted IndyMac Federal Bank, FSB, told Plaintiffs that the decision to open IndyMac Federal Bank was made "because there is value here. A decision also was made to employ all of you in the new bank with your pay and benefits intact. That decision was made because you are the ones who know better than anyone how to preserve that value. That is our objective; preserve the bank's value and return it to the private sector."

49.     Again, on July 14, 2008, still shortly after the takeover, Ms. Mathoda notified Plaintiffs with respect to 2008 Q3 deferred compensation that "only those with employment agreements (most if not all of you) will receive pro-rated Q3 bonuses."

50.     Yet again, on September 9, 2008, the President of Indymac Federal Bank, Rick Hoffman, reiterated that there was "no change to IndyMac's existing incentive compensation plans and scheduled payouts."

51.     On December 8, 2008, Plaintiffs received correspondence from Indymac Federal Bank, FSB, further establishing that their "vested rights [as of July 11, 2008] shall not be affected" by the FDIC's takeover of IndyMac.

52.     Based upon the foregoing, FDIC apparently did not repudiate (at least not effectively) the Plaintiffs' severance and non-discretionary "bonus" packages. On the contrary, the FDIC seemingly ratified the continuation of these benefits. Plaintiffs believe the FDIC provided

written approval for the severance and deferred compensation enticements to Plaintiffs to help IndyMac avoid collapse, or thereafter, to contain the damage from the IndyMac's failure.

53.     After accepting the "retention loan" compensation from IndyMac, and after their right to keep this money vested (before July 11, 2008), and without having been paid the promised severance and non-discretionary "bonus" compensation, Plaintiffs bought homes with the retention incentives, tied up the funds in other investments, and/or generally provided support to their families with this money. Collection of the money received by Plaintiffs in connection with the Promissory Notes at this juncture would push Plaintiffs into bankruptcy and/or force them out of their homes.

54.     Yet, on or about March 19, 2009 (the same day that the FDIC was appointed receiver of Indymac Federal Bank, FSB, upon information and belief), Defendants first evinced an intention to collect on "Promissory Notes" executed by Plaintiffs with IndyMac Bank, FSB, before the latter went into receivership.

55.     Likewise, at least one Plaintiff, Ashwin Adarkar, who signed a Deferred Compensation Agreement with IndyMac Bank and had effectively made a loan of his earned compensation to the Bank for a promised rate of return, was not paid the funds he had loaned to his former employer, though he was entitled to such funds upon the termination of his employment, according to said Agreement.

56.     On different dates since July 11, 2008, Plaintiffs have filed timely claims with the FDIC exhausting administrative remedies concerning the severance, "bonus"/deferred compensation, the funds subject to ERISA, and other unpaid wages, setting-off their claims with

repayment of the "retention loans," though some Plaintiffs never received notice of their right to file claims from the FDIC as required under 12 U.S.C. §1821(d)(3)(B)(i).

### Causes of Action

**COUNT ONE   --   BREACH OF CONTRACT AND IMPLIED CONTRACT – DENIED SEVERANCE**

57.     Plaintiffs hereby incorporate as though restated each of the statements set forth in the paragraphs above.

58.     Plaintiffs had contracts and implied contracts with IndyMac Resources, Inc., and IndyMac Bank, FSB, executed under the law of the State of California, entitling them to severance compensation if they were involuntarily terminated in a layoff.

59.     In consideration for this severance, Plaintiffs agreed to remain employed with IndyMac Resources, Inc., and IndyMac Bank, FSB, and perform their duties satisfactorily and without misconduct, until their services were terminated.

60.     Plaintiffs provided their originally promised consideration.

61.     Shortly before the FDIC was appointed receiver of IndyMac Bank, FSB, and IndyMac Federal Bank, FSB, was created, Plaintiffs were notified that they would be involuntarily terminated in a layoff.

62.     After the FDIC was appointed receiver, Defendants did not effectively repudiate Plaintiffs' severance agreements, but, on the contrary, reaffirmed them and sought Plaintiffs' continued service to minimize losses to the Government and the former IndyMac customers.

63.     Plaintiffs provided additional consideration to IndyMac Federal Bank, FSB, and IndyMac Resources, Inc., during their continued employment after the FDIC was appointed receiver for IndyMac Bank, FSB.

64.     Neither the FDIC, nor IndyMac Resources, Inc. (which continues to exist), nor OneWest Bank, FSB (which upon information and belief, is successor to IndyMac Federal Bank, FSB), paid any of the promised and earned severance to Plaintiffs.

65.     The FDIC stepped into the shoes of the failed IndyMac Bank, FSB, and IndyMac Federal Bank, FSB (under 12 U.S.C. § 1821(d)(2)(A)(i)), and is jointly and severally liable for the severance with IndyMac Resources, Inc., and OneWest Bank, FSB.

66.     Defendants' actions and omissions have directly and proximately caused Plaintiffs' economic losses valued at several million dollars in severance benefits plus interest (in an amount to be specifically determined at trial), which Plaintiffs are entitled to recover.

**COUNT TWO   --   BREACH OF CONTRACT AND IMPLIED CONTRACT – OTHER DENIED COMPENSATION**

67.     Plaintiffs hereby incorporate as though restated each of the statements set forth in the paragraphs above.

68.     Plaintiffs had contracts and implied contracts with IndyMac Resources, Inc., and IndyMac Bank, FSB, executed under the law of the State of California, entitling them to deferred compensation, also referred to as quarterly "bonuses," which were non-discretionary.

69.     In consideration for this compensation, Plaintiffs agreed to perform their duties satisfactorily for IndyMac Resources, Inc., and IndyMac Bank, FSB, without misconduct, until terminated.

70.   Plaintiffs provided their originally promised consideration.

71.   Shortly before the FDIC was appointed receiver of IndyMac Bank, FSB, and IndyMac Federal Bank, FSB, was created, Plaintiffs were notified that they would be involuntarily terminated in a layoff.

72.   After the FDIC was appointed receiver, Defendants did not effectively repudiate Plaintiffs' compensation agreements, but, on the contrary, reaffirmed them and sought Plaintiffs' continued service to minimize losses to the Government and the former IndyMac customers.

73.   Plaintiffs provided additional consideration to IndyMac Federal Bank, FSB, and IndyMac Resources, Inc., during their continued employment after the FDIC was appointed receiver for IndyMac Bank, FSB.

74.   Neither the FDIC, nor IndyMac Resources, Inc. (which continues to exist), nor OneWest Bank, FSB (which upon information and belief, is successor to IndyMac Federal Bank, FSB), paid all of the promised and earned deferred compensation to Plaintiffs, which included but was not limited to prorated portions of the quarterly, so-called bonuses.

75.   The FDIC stepped into the shoes of the failed IndyMac Bank, FSB, and IndyMac Federal Bank, FSB (under 12 U.S.C. § 1821(d)(2)(A)(i)), and is jointly and severally liable for the "bonuses" with IndyMac Resources, Inc., and OneWest Bank, FSB.

76.   Defendants' actions and omissions have directly and proximately caused Plaintiffs' economic losses valued at hundreds of thousands of dollars in lost "bonus" compensation plus interest (in an amount to be specifically determined at trial), which Plaintiffs are entitled to recover.

**COUNT THREE   —   VIOLATION OF ERISA AND BREACH OF CONTRACT –
DEFERRED COMENSATION PLAN**

EXHIBIT I TO DEC. 2, 2009 STIPULATION

77.     Plaintiffs hereby incorporate as though restated each of the statements set forth in the paragraphs above.

78.     Plaintiff Adarkar had an express and implied contract with IndyMac Resources, Inc., and IndyMac Bank, FSB, wherein Plaintiff Adarkar agreed to participate in a Deferred Compensation Plan and allow IndyMac Bank, FSB, to withhold and invest a part of his earned compensation, with the promise that Plaintiff Adarkar would collect this deferred compensation at a later time, *i.e.,* upon retirement, under other special circumstances, or upon termination. Repayment of these monies was non-discretionary.

79.     Specifically, the Deferred Compensation Plan included a "Termination Benefit," which was available to employees who left the company prior to retirement, disability or death and required IndyMac Bank, FSB to pay the plan participants in either a lump sum or in monthly installments for up to 15 years.

80.     Shortly before the FDIC was appointed receiver of IndyMac Bank, FSB, and IndyMac Federal Bank, FSB, was created, Plaintiff Adarkar was notified that he would be involuntarily terminated in a layoff.

81.     At this time, Plaintiff Adarkar had $259,625 in his Deferred Compensation Plan account.

82.     When IndyMac failed, the FDIC stepped into the shoes of the Plan Administrator, the failed IndyMac Bank, FSB Employee Benefits Fiduciary Committee (under 12 U.S.C. § 1821(d)(2)(A)(i)), and became jointly and severally liable for the debts and liabilities with IndyMac Resources, Inc., and OneWest Bank, FSB.

EXHIBIT I TO DEC. 2, 2009 STIPULATION

83.   Mr. Adarkar was never paid the promised deferred compensation he was owed upon termination under the Deferred Compensation Plan.

84.   Because the FDIC stepped into the shoes of the Plan Administrator, becoming Receiver for IndyMac Bank, FSB Employee Benefits Fiduciary Committee, by filing timely Proof of Claim forms with the FDIC, noting that he was still owed the funds under the Deferred Compensation Plan, Plaintiff Adarkar exhausted his administrative remedies as required by section 503 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1133.

85.   In particular, Plaintiff Adarkar contacted the FDIC in September 2008 and was told by an FDIC official over the phone that the FDIC was the appropriate party with whom to file a claim for benefits under the Deferred Compensation Plan. As such, Plaintiff Adarkar followed the FDIC's instructions and exhausted ERISA's requirements by filing a timely claim for benefits with the FDIC on October 8, 2008. In April 2009, Plaintiff Adarkar was informed by FDIC official Chris Kim that he had submitted all the necessary claim documents to protect his interests, with his submission of his Proof of Claim with the FDIC as Receiver for IndyMac Bank, FSB. In the alternative, even if Mr. Adarkar in some manner failed to exhaust pursuant to ERISA, Defendant FDIC is equitably estopped from claiming a defense of exhaustion based on the information it provide to Mr. Adarkar. In the alternative, if equitable estoppel does not apply, then equitable tolling should apply.

86.   Defendants' actions and omissions have directly and proximately caused Plaintiff Adarkar's economic losses valued at hundreds of thousands of dollars plus interest of misappropriated funds (in an amount to be specifically determined at trial), which Plaintiffs are entitled to recover under ERISA section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B).

**COUNT FOUR    -- UNFAIR PRACTICE UNDER CALIFORNIA'S UNFAIR**
**COMPETITION LAW**

87.    Plaintiffs hereby incorporate as though restated each of the statements set forth in the paragraphs above.

88.    Section 17200 of the California Business and Professions Code — California's Unfair Competition Law — prohibits unfair competition by prohibiting, *inter alia*, any unlawful or unfair business acts or practices.   The foregoing conduct by Defendants (as California employers and the receiver for such), attracting and preventing competitors from hiring top executives with promised severance and other compensation, and then withholding such promised compensation, as alleged above, constitutes unlawful business actions and practices in violation of Section 17200, *et seq.*

89.    Pursuant to Business and Professions Code § 17200 *et seq.*, Plaintiffs are entitled to restitution of the fruits of Plaintiffs' labors for which they did not receive their full, promised compensation, including all profits and/or savings obtained by their service, or, in the alternative, severance and other compensation described herein that Defendants have improperly withheld and retained during a period that commences four years prior to the filing of this action, in addition to an award of interest, attorneys' fees, and costs.

**COUNT FIVE   –          SEEKING EQUITABLE RELIEF AND, UNDER THE**
**DECLARATORY JUDGMENT ACT 28 U.S.C. § 2201, A**
**DECLARATORY JUDGMENT, REGARDING THE**
**DEFENDANTS' EXPRESSED INTENTION TO ATTEMPT**
**TO COLLECT FUNDS FROM PLAINTIFFS STEMMING**
**FROM THE "PROMISSORY NOTES"**

90.    Plaintiffs hereby incorporate as though restated each of the statements set forth in the paragraphs above.

EXHIBIT I TO DEC. 2, 2009 STIPULATION

91.    Defendants, by a communication on March 19, 2009 (or about that date), notified Plaintiffs that they intend to seek collection of the "retention loan" compensation accepted by Plaintiffs in 2008, with interest accruing rapidly at present and until the loans are repaid.

92.    Plaintiffs signed Promissory Notes with IndyMac Bank, FSB, indicating that, unless they resigned or were terminated for cause, they would only be required to repay the compensation provided therein as a set-off against severance payments and other outstanding compensation (*e.g.*, non-discretionary bonus compensation) owed at the conclusion of employment. Their understanding of the written document was informed by the plain language of the Promissory Notes and what they were advised by IndyMac's Directors and Officers in writing and verbally concerning these "retention loan" documents at the time they chose to execute them and thereafter.

93.    Plaintiffs did not resign and were not terminated for cause, but rather, were involuntarily terminated in a layoff.

94.    Plaintiffs have been notified by the FDIC that Defendants do not intend to pay Plaintiffs' severance or other compensation owed to them (including but not necessarily limited to non-discretionary quarterly bonus compensation) at the conclusion of employment.

95.    Plaintiffs were induced to remain employed and working at Defendants until their involuntary termination as Plaintiffs' consideration for these "retention loans."

96.    Plaintiffs were induced not to take retirement or participate in earlier layoffs as Plaintiffs' consideration for the promises conveyed in the "retention loans."

97.    Plaintiffs were induced to accept greater "retention loan" payments by being told that they could set-off any amounts reflected therein against severance and other compensation at the conclusion of their employment.

EXHIBIT I TO DEC. 2, 2009 STIPULATION

98.     Plaintiffs signed no Promissory Notes with any entities other than IndyMac Bank, FSB, and did not agree after July 11, 2008, to pay any amount related to the Promissory Notes they previously signed without receiving severance.

99.     Plaintiffs were notified by IndyMac Bank, FSB, that the compensation reflected in the Promissory Notes (*i.e.*, the "retention loans") was vested and considered fully earned compensation prior to the FDIC takeover of that entity on July 11, 2009.

100.     Plaintiffs relied upon the assurances they received regarding the compensation provided in the Promissory Notes, *i.e.*, that it was vested, fully-earned compensation in 2008, in investing and spending this money for their benefit and that of their families.

101.     For the foregoing reasons, the Court should enjoin Defendants from any collection under the Promissory Notes, as Defendants have sought with their March 19, 2009 letters.

102.     The Declaratory Judgment Act, 28 U.S.C. § 2201, is to allow litigants earlier access to federal courts in order to spare potential defendants from the threat of impending litigation. In this case, Plaintiffs are the potential defendants in an action by Defendants to collect on the Promissory Notes. Pursuant to the Act, this Court may declare the rights and other legal relations of parties involved in an actual controversy that has not reached a stage at which either party may seek a coercive remedy and in cases where a party who could sue for coercive relief has not yet done so. The Act is also intended to help potential defendants avoid a multiplicity of actions by affording an adequate, expedient, and inexpensive means for declaring in one action the rights and obligation of the litigants.

103.     Under 12 U.S.C. § 1821(d)(2)(A)(i), as amended by FIRREA, the FDIC " 'shall ... by operation of law, succeed to-all rights, titles, powers, and privileges of the insured depository

EXHIBIT I TO DEC. 2, 2009 STIPULATION

institution,' " and, as receiver "'steps into the shoes' of the failed S & L," so that " 'any defense good against the original party is good against the receiver.' " *O'Melveny & Myers v. F.D.I.C.*, 512 U.S. 79, 114 S.Ct. 2048, 2054, 129 L.Ed.2d 67 (1994). Because IndyMac Bank, FSB, prior to the FDIC takeover, stated that Plaintiffs did not have to pay the "retention loans," it would be *ultra vires* for the Government to attempt to assert greater rights than IndyMac Bank, FSB, claimed, since IndyMac's claims to the "retention loan" money were expressly waived. Moreover, Defendants should be equitably estopped from asserting a right to collect on the Promissory Notes, when IndyMac told Plaintiffs that the loans were forgiven.

104.    Moreover, the fundamental reason of all parties for entering into the "retention loan" contracts was frustrated by the supervening circumstances of the IndyMac Bank, FSB's failure and Plaintiffs' negated severance and non-discretionary bonus payments, thus destroying substantially the value of performance by either party and rendering Plaintiffs' performance in repaying the "retention loans" (to the extent it was ever required) impracticable. That is, they can no longer pay back the "loans" out of their wages or severance, or have it forgiven based on IndyMac's successes, since according to the FDIC they are no longer collecting severance/wages and IndyMac Bank, FSB, has ceased to exist. In short, the intentions of the contracting parties cannot be fulfilled. Forced repayment of their retention incentives at this juncture would pose extreme hardship on Plaintiffs, who could not reasonably have foreseen that the severance and non-discretionary, quarterly bonuses upon which they were relying would be abruptly cancelled, since they were told otherwise.

105.    Under California contract law, which governs the agreements at issue here, promissory estoppel consists of: (1) a clear promise, (2) reliance, (3) substantial detriment, and (4)

damages measured by the extent of the obligation assumed and not performed. *Toscano v. Greene Music*, 124 Cal.App.4th 685, 692 (2004). Although equitable in nature, promissory estoppel is akin to a cause of action based on contract, except that the consideration needed to form an enforceable contract is provided by detrimental reliance. *Id.* at 692-693. California courts therefore "have characterized promissory estoppel claims as being basically the same as contract actions, but only missing the consideration element...." *US Ecology, Inc. v. State of California,* 129 Cal.App.4th 887, 903 (2005). Plaintiffs bypassed opportunities to retire or collect severance in other layoffs by IndyMac in reliance upon the IndyMac's explanation that the "retention loan" ceased to exist or would be forgiven. Plaintiffs took greater "retention loans" based upon IndyMac's explanations, as well. As such, even if a court found that Plaintiffs provided no or inadequate consideration for the "retention loans" as intended (*i.e.,* to be repaid only out of severance/wages) or (in the alternative) inadequate or no consideration for forgiveness of the Promissory Notes, Plaintiffs detrimentally relied upon the clear promises that the former "retention loans" did not need to be repaid and became wages, as described above. Promissory estoppel claims can lie against the FDIC. *See, e.g., Buckholz v. F.D.I.C.*, 129 F.3d 868, 872 (6th Cir. 1997).

106.    Based on the foregoing, the Court should declare under the Declaratory Judgment Act as follows: Defendants are not entitled to collect any funds stemming from the Promissory Notes with Plaintiffs, as had been sought in Defendants' March 19, 2009 letters. Such a declaration is warranted for at least the reasons described in the preceding paragraphs, including but not limited to (applying California law in each instance): the interpretation of the contract described above, as reflected in the documents in IndyMac's records on or before July 11, 2008, when the FDIC took over IndyMac Bank, FSB; and/or, loan forgiveness and waiver of Defendants' rights to collect on

the Promissory Notes, as reflected in the same documents; and/or, estoppel; and/or, frustration.

**COUNT SIX    --    MISREPRESENTATION**

107.   Plaintiffs hereby incorporate as though restated each of the statements set forth in the paragraphs above.

108.   In the alternative, if the Court were to find that Plaintiffs misunderstood the nature of the "retention loans" and remained required to repay them, then Plaintiffs contend that they relied upon fraudulent or negligent misrepresentations by IndyMac and/or the companies' Officers and Directors, as described above.

109.   Because the Officers' and Directors' misrepresentations may be imputed to IndyMac, and hence to the FDIC, which stands in the shoes of IndyMac Bank and IndyMac Federal Bank, Defendants are liable for the consequences. Such include but may not be limited to tort damages arising from Plaintiffs' reliance upon the misrepresentations, including but not limited to all costs stemming from the understanding that the "retention loans" did not require repayment, and other tort relief available, in an amount to be determined at trial.

**COUNT SEVEN    --       VIOLATION OF THE FEDERAL WARN ACT**

110.   Plaintiffs hereby incorporate as though restated each of the statements set forth in the paragraphs above.

111.   Plaintiffs Grove Nichols and Gulshan Garg were notified of a discharge without cause on their part on or about July 11, 2008 or within 30 days of that date, as the reasonably

foreseeable consequence of the mass layoff ordered by Defendants, and are "affected employees" within the meaning of 29 U.S.C. §2101(a)(5).

112.    Defendants terminated Plaintiff Nichols' and Garg's employment as part of a mass layoff as defined by 29 U.S.C. § 2101 (a)(2), (3) for which they were entitled to receive sixty (60) days advance written notice under the WARN Act.

113.    The mass layoff at the Defendants' facilities resulted in "employment losses," as that term is defined by 29 U.S.C. § 2101(a)(2) for at least fifty (50) of Defendants' employees as well as 33% of Defendants' workforce at each of the companies' facilities, excluding part-time employees as that term is defined by 29 U.S.C. § 2101(a)(8).

114.    Defendants, as a "single employer," did not give Plaintiff Nichols and Garg the statutorily required sixty (60) days notice of the mass layoff or termination in violation of the WARN Act.

115.    At all relevant times, Defendants were "employers" as that term is defined in 29 U.S.C. § 2101(a)(1) and 20 C.F.R. § 639(a) and continued to operate as a business until determining to order a mass layoff.

116.    Upon information and belief, at or about the time that Plaintiff Nichols and Garg were notified of their discharge, shortly before July 11, 2008, Defendants noticed the discharge of hundreds of other employees, who worked more than 4000 hours per week within the United States.

117.    Defendants failed to pay Plaintiffs Nichols and Garg their respective wages, salary, commissions, bonuses, accrued holiday, and vacation for sixty (60) calendar days following notice of their terminations and failed to make the 401(k) contributions and provide them with health insurance coverage and other employee benefits under ERISA for sixty (60) calendar days from and after notice of their respective terminations. As such, Plaintiffs Nichols and Garg are "aggrieved employees" of the Defendants as that term is defined in 29 U.S.C. §2104(a)(7), and are entitled to

---

all relief available under the WARN Act, including Plaintiffs' reasonable attorneys fees under 29 U.S.C. § 2104.

## COUNT EIGHT   -- VIOLATION OF THE CALIFORNIA WARN ACT

118.    Plaintiffs hereby incorporate as though restated each of the statements set forth in the paragraphs above.

119.    Plaintiff Nichols and Plaintiff Garg were employed at Defendants' facilities in California until they were notified of their involuntary termination without cause, on or shortly before July 11, 2008.

120.    Plaintiffs Nichols and Garg were employees of Defendants, and Defendants were their employers, as those terms are defined in Cal. Labor § 1400, et seq.

121.    Plaintiffs Nichols and Garg were subjected to a "mass layoff," "relocation," or "termination," as those terms are defined in Cal. Labor § 1400, et seq., of which they were notified within 30 days of July 11, 2008.

122.    Defendants operated facilities in California that were "covered establishment(s)," as that term is defined in Cal. Labor § 1400, et seq., because they employed 75 or more persons in certain facilities in the 12 months preceding the mass layoff, relocation, or termination.

123.    Defendants failed to provide Plaintiffs Nichols and Garg with the proper notice required by Cal. Labor § 1401 prior to the mass layoff, relocation, or termination.

124.    Defendants failed to provide Plaintiffs Nichols and Garg and others similarly situated with 60 days wages and benefits as required by Cal. Labor § 1402.

125.    Accordingly, Defendants are therefore liable to Plaintiffs Nichols and Garg for back pay and benefits for 60 days, as outlined in Cal. Labor § 1402, as well as interest, attorneys' fees under Cal. Labor § 1404, and all other relief available under the California WARN Act.

EXHIBIT I TO DEC. 2, 2009 STIPULATION

## Prayer for Relief

126.   WHEREFORE, Plaintiffs pray for relief as follows:

A.   That the Court award Plaintiffs all unpaid severance, deferred compensation, and non-discretionary quarterly bonuses to which they were entitled, plus accumulated interest; and

B.   That the Court award Plaintiff Adarkar all relief available with respect to his Deferred Compensation Plan under ERISA; andC.   That the Court award Plaintiffs Garg and Nichols all relief available under the California and federal WARN Acts; and

D.   That the Court enjoin Defendants from taking any action concerning the Promissory Notes which Plaintiffs executed with IndyMac Bank, FSB, including collection of any supposed debts plus interest, as described in communications by Defendants on or about March 19, 2009; and

E.   That the Court declare that Plaintiffs owe nothing to Defendants under the Promissory Notes/in connection with the "retention loans" which Plaintiffs received from IndyMac Bank, FSB; and

F.   That Defendants be ordered and enjoined to pay restitution to Plaintiffs due to Defendants' violations, pursuant to California law; and

G.   For such other and further relief, in law or equity, as this Court may deem appropriate and just.

EXHIBIT I TO DEC. 2, 2009 STIPULATION

Dated: November 20, 2009                    BRYAN SCHWARTZ LAW


By:

Bryan Schwartz
180 Grand Avenue, Suite 1550
Oakland, CA 94612
Tel.: 510-444-9300
FAX: 510-444-9301
Email: Bryan@BryanSchwartzLaw.com

ATTORNEY FOR PLAINTIFFS

---

*Landwehr, et al., v. FDIC, et al.*, Case No. 1:09-cv-00716; Second Amended Complaint         Page 38

EXHIBIT I TO DEC. 2, 2009 STIPULATION