UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| TIMOTHY JAMES LANDWEHR *et al.*, | : | |
| | : | |
| Plaintiffs, | : | Civil Action No.: 09-0716 (RMU) |
| | : | |
| v. | : | Re Document Nos.: 44, 47, 68 |
| | : | |
| FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for IndyMac Bank, F.S.B. and IndyMac Federal Bank, F.S.B., *et al.*, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

### GRANTING IN PART AND DENYING WITHOUT PREJUDICE IN PART THE FDIC'S MOTION TO DISMISS; GRANTING THE PLAINTIFFS' MOTION TO DISMISS IMR'S ORIGINAL COUNTERCLAIM; GRANTING IN PART AND DENYING IN PART IMR'S MOTION TO AMEND ITS COUNTERCLAIM

### I. INTRODUCTION

The plaintiffs are former employees of IndyMac Bank, F.S.B. ("IMB"), IndyMac Federal Bank, F.S.B. ("IMFB") and IndyMac Resources, Inc. ("IMR"). They commenced this action against IMR and the Federal Deposit Insurance Corporation ("FDIC"), in its capacity as receiver for IMB and IMFB, to recover severance, deferred compensation and bonus payments to which they were allegedly entitled. The plaintiffs also seek to prevent the defendants from taking any actions to seek the repayment of "retention loans" extended to the plaintiffs during their employment.

The FDIC has moved to dismiss the plaintiffs' claims against it for lack of subject matter jurisdiction and failure to state a claim for which relief can be granted. In addition, the plaintiffs have moved to dismiss IMR's original counterclaim, which is premised on the plaintiffs' alleged anticipatory repudiation of their obligations under the retention loans. Finally, IMR has moved

for leave to amend its original answer and counterclaim. For the reasons discussed below, the court grants in part and denies in part the FDIC's motion to dismiss, grants the plaintiffs' motion to dismiss IMR's original counterclaim and grants in part and denies in part IMR's motion for leave to amend.

## II. FACTUAL & PROCEDURAL BACKGROUND

The plaintiffs are former employers of IMB, a bank that, prior to its collapse, was one of the largest mortgage originators in the United States. 3d Am. Compl. ¶¶ 3-22. During the term of his or her employment, each plaintiff was promised a compensation package that included a "generous severance package . . . which they would collect in the event of an involuntary termination." *Id.* ¶ 29. Additionally, at least one plaintiff was offered a "deferred compensation plan . . . wherein some of his salary was loaned back to IndyMac with a promised repayment and an annual rate of return at a later date." *Id.* ¶ 31.

In 2007, the nationwide decline in mortgage lending severely impacted IMB. *Id.* ¶ 32. To induce the plaintiffs to stay with IMB and "try to the build the company back to solvency," IMB offered the plaintiffs "retention loans," memorialized in promissory notes executed by the plaintiffs and IMB. *Id.* According to the plaintiffs, the parties understood that these loans "would be set-off against their severance and other compensation at the end of their employment" but "would not [need to be paid] in the event of termination without cause." *Id.* ¶ 33-34.

On July 11, 2008, the Office of Thrift Supervision closed IMB and authorized the creation of IMFB. FDIC's Mot. to Dismiss ("FDIC's Mot.") at 3-4. The FDIC was then appointed as Receiver for both IMB and IMFB, and the bulk of IMB's assets and deposit

liabilities were transferred to IMFB. *Id.* As a result, the plaintiffs became employees of IMFB and were notified that their employment would terminate on September 15, 2008. 3d Am. Compl. ¶¶ 42, 47.

"After the takeover, [IMB] and the [FDIC] continually promised that the plaintiffs' compensation and benefits would remain intact" because the plaintiffs' continued work was important to the FDIC's ability to effectively manage the takeover of IMB. *Id.* ¶ 48. Yet in March 2009, the FDIC began steps "to collect on [the retention loans] executed by the plaintiffs with [IMB] before [it] went into receivership." *Id.* ¶ 55. Likewise, the plaintiff who had allegedly loaned part of his salary back to IMB as a form of deferred compensation was not reimbursed for those monies, despite the fact that his deferred compensation plan entitled him to payment of those funds upon the termination of his employment. *Id.* ¶ 56.

The plaintiffs commenced this action in April 2009. *See generally* Compl. In November 2009, the FDIC made a formal determination "that insufficient assets exist in the receivership of [IMB] . . . and the receivership of [IMFB] to make any distribution to general unsecured claims, and therefore such claims will recover nothing and have no value." 74 Fed. Reg. 59, 540 (Nov. 18, 2009) (hereinafter, "the insufficient assets determination"). The insufficient assets determination also recognized that the total liabilities in the receiverships of IMB and IMFB far exceeded the assets available in those receiverships, though it did not make any determinations with respect to the value of any claims senior to general unsecured claims. *Id.*

In January 2010, the plaintiffs filed a third amended complaint against the FDIC, in its capacity as receiver for IMB and IMFB; IMR, an entity affiliated with IMB that also functioned as the plaintiffs' employer;[1] and OneWest Bank, F.S.B., a bank that had purchased a large

---

[1] As discussed in the following sections, IMB assigned its rights under the promissory notes to IMR. Pls.' Opp'n to FDIC's Mot. to Dismiss at 13-14.

3

portion of IMB.² *See generally* 3d Am. Compl. The plaintiffs have asserted claims for monetary relief based on the severance, deferred compensation and bonus payments to which they were allegedly entitled. *Id.* ¶ 128. The plaintiffs have also asserted claims for declaratory and injunctive relief prohibiting the defendants from seeking repayment of the "retention loans." *Id.*

On January 29, 2010, the FDIC moved to dismiss all claims against it in the third amended complaint. *See generally* FDIC's Mot. The FDIC argues that this court lacks subject matter jurisdiction over the plaintiffs' claim for monetary relief because the insufficient assets determination establishes that the plaintiffs cannot recover anything through this action, resulting in the absence of a live claim or controversy. *Id.* at 9-14. The FDIC also contends further that even if this court had jurisdiction, the fact that the plaintiffs cannot recover through this action means that their claims for monetary relief should be denied on the grounds of prudential mootness. *Id.* at 14-19. Furthermore, the FDIC asserts that the plaintiffs' claims against it for declaratory and injunctive relief must be dismissed because such relief is barred as a matter of law. *Id.* at 20-22.

Rather than moving to dismiss, IMR filed an answer to the third amended complaint, in which it included a counterclaim based on the plaintiffs' alleged anticipatory repudiation of their obligations under the retention loans. *See generally* IMR's Countercl. The plaintiffs have moved to dismiss that counterclaim for failure to state a claim for which relief can be granted. *See generally* Pls.' Mot. to Dismiss IMR's Countercl. ("Pls.' Mot."). On July 29, 2010, IMR filed a motion for leave to amend its original answer and counterclaim. *See generally* IMR's Mot. to Amend Countercl. ("IMR's Mot."). Through that motion, IMR seeks leave to supplement the allegations underlying its anticipatory repudiation counterclaim, raise an

---

²     OneWest Bank, F.S.B. has since been dismissed as a defendant to this suit. Order (Mar. 10, 2010).

4

additional affirmative defense of anticipatory breach and assert an additional counterclaim based on the plaintiffs' purported breach of the promissory notes. *See generally id.* The plaintiffs oppose IMR's motion for leave to amend, arguing that granting leave to amend would be futile because the proposed amendments do not state a claim for relief. *See generally* Pls.' Opp'n to IMR's Mot.

The FDIC's motion to dismiss, the plaintiffs' motion to dismiss IMR's first counterclaim and IMR's motion for leave to amend its counterclaim are now ripe for adjudication. The court now turns to the applicable legal standards and the parties' arguments.

## III.  ANALYSIS

### A.  The Court Grants in Part and Denies Without Prejudice in Part the FDIC's Motion to Dismiss

#### 1.  The Court Denies Without Prejudice the FDIC's Motion to Dismiss the Plaintiff's Monetary Claims as Moot

The FDIC contends that the court lacks jurisdiction over the plaintiffs' claims for monetary relief because these claims do not present a live case or controversy. *See* FDIC's Mot. at 12-14. More specifically, the FDIC asserts that the insufficient assets determination "conclusively establishes that there are no assets in the Receivership estates to make any distribution to . . . [the] [p]laintiffs." *Id*. at 9. It argues further that "Article III of the Constitution grants federal courts jurisdiction to decide only actual "cases or controversies," and that there is no "case or controversy" under Article III where, as here, the court cannot enter a judgment that would redress the harm suffered by the plaintiff. *Id.* at 12. Thus, the FDIC contends that because this court "is no longer able to grant meaningful relief, the plaintiffs' monetary claims must be dismissed for a lack of subject-matter jurisdiction." *Id.* at 12-13. In the alternative, the FDIC argues that even if the insufficient assets determination does not divest this

5

court of jurisdiction, it requires the court to exercise its authority to dismiss the monetary claims on the grounds of prudential mootness because the FDIC "do[es] not, and never will, have sufficient assets to satisfy" the claims of general unsecured creditors like the plaintiffs. *Id*. at 5, 14.

The plaintiffs dispute the FDIC's assertion that the insufficient assets determination establishes the worthlessness of their monetary claims. Pls.' Opp'n to FDIC's Mot. at 19 n.6, 22. More specifically, the plaintiffs challenge their categorization as "general unsecured creditors," arguing that they were provided special promises by the defendants that elevate their claims above those of general unsecured creditors. *Id*.; *see also* 3d Am. Compl ¶¶ 46-53. The plaintiffs also assert that the FDIC misconstrues the requirements of Article III, arguing that in this Circuit, the existence of a "case or controversy" does not turn on whether the FDIC as receiver possesses the funds necessary to satisfy the plaintiffs' claims. Pls.' Opp'n to FDIC's Mot. at 15-16. In addition, the plaintiffs argue that the insufficient assets determination does not deprive this court of jurisdiction because the plaintiffs administratively exhausted their claims before commencing this action. *Id.* at 16-19. Furthermore, the plaintiffs contend that the court cannot conclude, at this stage of the litigation, that no remedy could be fashioned to redress their injury. *Id*. at 19-23.

The FDIC's jurisdictional and prudential mootness arguments rest on a provision of the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA") specifying the order in which a failed bank's liabilities are to be settled by the bank's receiver. 12 U.S.C. § 1821(d)(11)(A). The provision states that

> amounts realized from the liquidation or other resolution of any insured depository institution by any receiver appointed for such institution shall be distributed to pay claims (other than secured claims to the extent of any such security) in the following order of priority:
> (i) Administrative expenses of the receiver.
> (ii) Any deposit liability of the institution.

> (iii) Any other general or senior liability of the institution (which is not a liability described in clause (iv) or (v)).
> (iv) Any obligation subordinated to depositors or general creditors (which is not an obligation described in clause (v)).
> (v) Any obligation to shareholders or members arising as a result of their status as shareholders or members (including any depository institution holding company or any shareholder or creditor of such company).

*Id.*

The insufficient assets determination states that in the receiverships of IMB and IMFB, "insufficient assets exist to make any distribution on general unsecured claims (and any lower priority level) and therefore all such claims, asserted or unasserted, will recover nothing and have no value." FDIC's Mot., Ex. A at 5-6. It also states that the liabilities for the IMB and IMFB receiverships far exceed their assets. *Id.*[3] The insufficient assets determination does not, however, explicitly declare whether either receivership has sufficient funds to pay any "general or senior liability" or any "deposit liability" of IMB or IMFB. *See id.*; 12 U.S.C. § 1821(d)(11)(A).

As a result, the FDIC's argument that the insufficient assets determination conclusively establishes the worthlessness of the plaintiffs' monetary claims turns on its assertion that the plaintiffs are, at best, general unsecured creditors of the receiverships. FDIC's Mot. at 4, 11. The FDIC, however, has offered no support for this critical assertion and has not explained why the plaintiffs' monetary claims do not, as the plaintiffs suggest, constitute a higher priority liability of the receiverships. *See generally id.*; FDIC's Reply. Indeed, the FDIC's only response to the plaintiffs' arguments concerning the priority of their monetary claims is the unsupported statement that "[e]ven if such a promise had occurred (which the Receivers dispute), Plaintiffs would remain general unsecured creditors; they would not attain status as a higher-

---

[3] The IMB receivership's liabilities total $8.74 billion and assets total just $63.13 million. FDIC's Mot., Ex. A at 5-6. Similarly, the IMFB receivership's administrative expenses alone total $7.97 billion whereas its assets total just $5.29 billion. *Id.*

7

priority creditor." FDIC's Reply at 10. This conclusory assertion does not establish to the court's satisfaction that the plaintiffs' monetary claims must, as a matter of law, be treated as general unsecured claims.

Thus, because the FDIC has not established that the plaintiffs cannot recover anything from the FDIC on their monetary claims, the court denies the FDIC's motion to dismiss these claims. The court observes, however, that the priority of the plaintiffs' monetary claims may be an issue that can be resolved as a legal matter, without resort to extensive factual discovery. The court also notes that the FDIC has provided substantial legal authority for the proposition that when an insufficient assets determination establishes the worthlessness of a plaintiff's claim, such claims should be dismissed, if not for jurisdictional reasons, than on grounds of prudential mootness.[4] *See* FDIC's Mot. at 12-19; *see generally* FDIC's Notice of Recent Authority. Accordingly, although the court denies the FDIC's motion to dismiss the plaintiffs' monetary claims, it does so without prejudice to consideration of a renewed motion addressing why the plaintiffs' claims should be treated as general unsecured claims.

### 2. The Court Dismisses the Plaintiffs' Claims for Declaratory and Injunctive Relief Against the FDIC

The FDIC asserts that the plaintiffs' claims for declaratory and injunctive relief against it must be dismissed because such relief is barred as a matter of law. FDIC's Mot. at 20. More

---

[4] Courts have dismissed claims against the FDIC brought by general unsecured creditors on jurisdictional grounds after determining that the FDIC lacked sufficient assets to satisfy the plaintiffs' claims. *See, e.g.*, *Henrichs v. Valley View Dev.*, 474 F.3d 609, 615 (9th Cir. 2007) (dismissing the plaintiffs' claim for lack of subject matter jurisdiction because "[n]o assets remain[ed] in the receivership to satisfy [the plaintiffs'] claim, thus rendering the claim moot"). Courts have also concluded that prudential mootness warrants the dismissal of claims against the FDIC where the worthlessness of those claims has been established by an insufficient assets determination. *See, e.g.*, *Fed. Deposit Ins. Corp. v. Kooyomijian*, 220 F.3d 10, 14-15 (1st Cir. 2000) (affirming the district court's dismissal of a negligence claim on the grounds of prudential mootness because "the FDIC's worthlessness determination . . . precludes any relief for defendants").

8

specifically, it argues that 12 U.S.C. § 1821(j), the FIRREA's anti-injunction provision, precludes the relief sought by the plaintiffs by prohibiting courts from entering relief that would "restrain or affect the exercise of powers or functions" of the FDIC acting as receiver. *Id.* at 20-21. The plaintiffs dispute the FDIC's interpretation of § 1821(j), arguing that the provision does not bar the court from preventing the FDIC from acting outside its statutory authority or granting relief for claims properly exhausted at the administrative level. *See* Pls.' Opp'n to FDIC's Mot. at 5-14.

The plaintiffs also argue that the relief they seek would not, in any event, "restrain or affect" the FDIC's exercise of its powers as receiver because IMB assigned all of its rights under the transfer notes to IMR, which is not in FDIC receivership.[5] *Id.* at 13. The plaintiffs assert that as a result of this assignment, the FDIC "no longer has any powers or functions stemming from the [retention loans]." *Id.* at 14. The FDIC responds that if, as the plaintiff suggests, it no longer has any rights or obligations stemming from the retention loans, the plaintiff's claims for declaratory and injunctive relief prohibiting the FDIC from attempting to enforce those loans should be dismissed as moot. FDIC's Reply at 6.

The court concurs with the FDIC that the plaintiffs' claims for declaratory and injunctive relief against the FDIC are moot. Regardless of whether § 1821(j) bars the plaintiffs' claims for declaratory and injunctive relief, the plaintiffs and the FDIC acknowledge that the FDIC assigned all rights to the retention loans to IMR (which is not in FDIC receivership) and that "[t]here is nothing to enjoin and nothing remaining for the Court to declare in terms of these promissory notes in any action involving the Receivers." FDIC's Reply; *see also* Pls.' Opp'n to FDIC's Mot. at 13-14. Given the parties' agreement that the FDIC "has no remaining right to

---

[5] Indeed, as discussed below, IMR seeks to assert a breach of contract counterclaim against the plaintiffs based on their alleged failure to satisfy their obligations under the promissory notes. *See infra* Part III.C.3.

9

collect anything from [the] Plaintiffs" because of the assignment of rights to IMR, Pls.' Opp'n to
FDIC's Mot. at 4, the plaintiffs' requests for declaratory judgment and injunctive relief are moot
insofar as they relate to the FDIC and must be dismissed.[6] *See City of Houston, Tex. v. Dep't of
Hous. & Urban Dev.*, 24 F.3d 1421, 1428-32 (D.C. Cir. 1994) (stating that "[w]hen a plaintiff's
specific claim is moot or otherwise fully resolved . . . if a plaintiff has made no challenge to
some ongoing underlying policy . . . then the mooting of the specific claim moots any claim for a
declaratory judgment"); *cf. Kooyomjian*, 220 F.3d at 14 (holding that "if [the] FDIC no longer
holds the primary damage claim" then the claim for recoupment must fail); *Sharpe v. Fed.
Deposit Ins. Corp.*, 126 F.3d 1147, 1154-55 (9th Cir. 1996) (dismissing as moot the plaintiff's
claims for injunctive relief, and thus declining to consider whether 1821(j) barred such relief).
Accordingly, the court grants the FDIC's motion to dismiss the plaintiffs' claims against it for
declaratory and injunctive relief.

### B. The Court Grants the Plaintiffs' Motion to Dismiss IMR's Original Counterclaim

As previously noted, in its original answer and counterclaim, IMR alleged that the
plaintiffs anticipatorily repudiated their obligations under the promissory notes by commencing
this action, in which they seek *inter alia* a legal declaration that they have no obligation to repay
the retention loans. *See generally* IMR Countercl. The plaintiffs have moved to dismiss this
counterclaim. *See generally* Pls.' Mot. They argue that because a party's efforts to obtain a
declaratory judgment cannot, as a matter of law, constitute an anticipatory breach, IMR's
anticipatory breach counterclaim must be dismissed under Rule 12(b)(6). *See generally id.* IMR
responds that their anticipatory repudiation counterclaim is not based solely on the plaintiffs'

---

[6] IMR, the current holder of IMB's rights under the retention loans, has not moved to dismiss the
plaintiffs' claim against it.

efforts to obtain a declaratory judgment and that as a result, the plaintiffs' motion to dismiss should be denied. *See generally* IMR's Opp'n to Pls.' Mot.

Under California law, which governs the promissory notes underlying the retention loans, *see* Pls.' Mot. at 3 n.1, "[a]nticipatory breach occurs when one of the parties to a bilateral contract repudiates the contract. The repudiation may be express or implied." *Taylor v. Johnston*, 539 P.2d 425, 430 (Cal. 1975). "An express repudiation is a clear, positive, unequivocal refusal to perform." *Id.* By contrast, "an implied repudiation results from conduct where the promisor puts it out of his power to perform so as to make substantial performance of his promise impossible." *Id.*

In its original answer and counterclaim, IMR bases its anticipatory repudiation claim on the allegation that the plaintiffs

> clearly and unequivocally evinced their intention not to repay the . . . loans to Defendants in a number of ways, including, *inter alia*, by filing the Complaint herein in which they seek . . . a Declaratory Judgment that Defendant "is not entitled to collect any funds stemming from the Promissory Notes."

IMR's Countercl. ¶ 5; *see also id.* ¶ 10. The only specific act of repudiation identified in IMR's original counterclaim is the plaintiffs' commencement of this action in which it seeks declaratory judgment. *See generally id.*

Yet a declaratory judgment action "serves to set controversies at rest *before they lead to repudiation of obligations*." *Babb v. Superior Court*, 479 P.2d 379, 383 (Cal. 1971) (emphasis added); *see also* RESTATEMENT (SECOND) OF CONTRACTS § 250 cmt. d (observing that "[m]odern procedural devices, such as the declaratory judgment, may be used to mitigate the harsh results that might otherwise result from" of anticipatory repudiation). Indeed, numerous courts have concluded that neither the filing of a declaratory judgment action nor the allegations made in support of such an action can form the basis of a claim for anticipatory repudiation. *See, e.g.*,

*Principal Life Ins. Co. v. Lawrence Rucker 2007 Ins. Trust*, 674 F. Supp. 2d 562, 568 (D. Del. 2009) (joining the "chorus of other jurisdictions in finding that . . . statements made in the context of a declaratory judgment action are insufficient to establish repudiation as a matter of law"); *Principal Life Ins. Co. v. DeRose*, 2009 WL 4061366, at *7 (M.D. Pa. Nov. 23, 2009) (observing that "the fact that [the plaintiff] has followed lawful process by filing a complaint seeking declaratory relief in federal court is insufficient to state a claim for anticipatory repudiation for the simple reason that by bringing a declaratory action, [the plaintiff] is seeking a legal declaration regarding its rights and obligations under the policies"); *AXA Corporate Solutions v. Underwriters Reinsurance Co.*, 2004 WL 2534386, at *19 (N.D. Ill. Nov. 9, 2004) (noting that a declaratory judgment action "was not an attempt by [the plaintiff] to walk away from its contractual obligations" as a declaratory judgment action is the "antithesis of the definition of anticipatory breach").

This court concurs with the rulings cited above and concludes that the plaintiffs' commencement of this declaratory judgment action does not constitute an anticipatory repudiation of the promissory notes. Divested of this factual underpinning, IMR's original counterclaim is based solely on the allegation that the plaintiffs repudiated the contract "in a number of ways." *See* IMR's Countercl. ¶ 5. Yet this undefined and conclusory allegation, devoid of factual content, is insufficient to sustain IMR's counterclaim. *See Iqbal*, 129 S. Ct. at 1949 (observing that a claimant must allege sufficient factual content to state a plausible claim for relief). Accordingly, the court grants the plaintiffs' motion to dismiss IMR's original counterclaim.

## C. The Court Grants in Part and Denies in Part IMR's Motion for Leave to Amend Its Original Answer and Counterclaim

### 1. Legal Standard for a Motion for Leave to Amend

Rule 15(a) governs the amendment of pleadings, stating generously that "[t]he court should freely give leave when justice so requires." FED. R. CIV. P. 15(a). Courts shall "determine the propriety of amendment on a case by case basis." *Harris v. Sec'y, U.S. Dep't of Veterans Affairs*, 126 F.3d 339, 344 (D.C. Cir. 1997). Whether to grant or deny leave to amend rests in the district court's sound discretion. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Such discretion is not unlimited, however, for it is an "abuse of discretion" when a district court denies leave to amend without a "justifying" or sufficient reason. *Id*. at 181, 182; *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996). Reasons that justify a denial of leave to amend include undue delay, bad faith, repeated failure to cure a pleading's deficiencies, undue prejudice to the opposing party and futility of amendment. *Foman*, 371 U.S. at 182; *Richardson v. United States*, 193 F.3d 545, 548-49 (D.C. Cir. 1999); *Caribbean Broad. Sys., Ltd. v. Cable & Wireless P.L.C.*, 148 F.3d 1080, 1084 (D.C. Cir. 1998).

### 2. IMR's Proposed Anticipatory Repudiation Counterclaim and Anticipatory Breach Affirmative Defense Are Futile

In its motion for leave to amend its original answer and counterclaim, IMR seeks leave to supplement its anticipatory repudiation counterclaim and to raise an additional affirmative defense of anticipatory breach.[7] *See generally* IMR's Mot.; IMR's Am. Countercl. The plaintiffs argue that even when supplemented with the additional allegations contained in its

---

[7] As discussed in the following section, IMR also seeks leave to assert an additional counterclaim for breach of contract. *See infra* Part III.C.3. Although IMR's proposed amended answer and counterclaims also contains additional amendments, *see generally* IMR's Mot., Ex. A ("IMR's Am. Countercl."), the plaintiffs do not oppose these additional amendments, *see* Pls.' Opp'n to IMR's Mot. at 2. Accordingly, the court grants IMR's motion for leave to amend its answer and counterclaims in these respects as unopposed.

proposed amended counterclaim, IMR's anticipatory repudiation counterclaim and affirmative defense of anticipatory breach are futile for the same reason IMR's original counterclaim failed. Pls.' Opp'n to IMR's Mot. at 4-9.

IMR seeks to supplement its anticipatory repudiation allegations in two ways. First, whereas IMR's original counterclaim stated broadly that the plaintiffs' commencement of the declaratory judgment action constituted an act of repudiation, IMR's proposed amended counterclaim identifies specific statements made in the plaintiffs' third amended complaint that allegedly evince the plaintiffs' repudiation of their alleged contractual obligations. *See* IMR's Am. Countercl. ¶¶ 5, 11. Second, in its proposed amended counterclaim, IMR asserts that the plaintiffs' failure to make their first quarterly payment of principal and interest under the promissory note constitutes an "Event of Default" that further reveals the plaintiffs' repudiation of their contractual obligations. *Id.* ¶¶ 7-8, 12.

Yet, as previously discussed, *see supra* Part III.B.2, allegations made in a complaint seeking declaratory relief do not constitute an anticipatory repudiation and may not serve as the factual basis for such a claim. *See, e.g.*, *Lawrence Rucker 2007 Ins. Trust*, 674 F. Supp. 2d at 568. Accordingly, IMR cannot rely on statements made in the plaintiffs' third amended complaint to revive their anticipatory repudiation counterclaim. Without these allegations, the anticipatory repudiation counterclaim in IMR's proposed amended counterclaim would be redundant to its proposed breach of contract counterclaim, as both claims[8] would rest on the

---

[8] Indeed, it is far from clear that anticipatory repudiation and breach of contract constitute distinct "claims," as anticipatory repudiation is often described as simply one manner in which a party can breach a contract. *See* 23 WILLISTON ON CONTRACTS § 63:33 (observing that "the great weight of authority, whether rightly or wrongly decided, accepts the doctrine of *breach by anticipatory repudiation or 'anticipatory breach'*"); RESTATEMENT (SECOND) OF CONTRACTS § 253 (noting that anticipatory repudiation "is sometimes elliptically called an 'anticipatory breach,' meaning a breach by anticipatory repudiation, because it occurs before there is any breach by non-performance").

plaintiffs' alleged failure to make their first quarterly payment in violation of the terms of the promissory notes. *See* IMR's Am. Countercl. ¶¶ 12, 17. In failing to make this required payment, the plaintiffs have not merely repudiated their obligations under the promissory notes; they have breached their obligations. *See* RESTATEMENT (SECOND) OF CONTRACTS § 243 cmt. a (noting that "[i]f there is a breach by non-performance, in addition to the repudiation . . . the breach is not one by repudiation alone" and the rules governing non-performance govern); *see also Gov't Guarantee Fund of Republic of Finland v. Hyatt Corp.*, 955 F. Supp. 441, 450 (D.V.I. 1997) (striking an anticipatory repudiation counterclaim as redundant to the claimant's breach of contract claim). Accordingly, the court denies IMR's motion for leave to amend its anticipatory repudiation counterclaim and to add an affirmative defense of anticipatory breach.

### 3. IMR's Proposed Breach of Contract Counterclaim is Not Futile

IMR also seeks leave to assert an additional counterclaim for breach of contract based on the plaintiffs' failure to make their first quarterly payment on the retention loans on March 31, 2010, as required. IMR's Am. Countercl. ¶¶ 15-19. The plaintiffs assert that this proposed breach of contract counterclaim is futile because the plain language of the promissory notes memorializing the retention loans precludes IMR from seeking to enforce the retention loans. Pls.' Opp'n to IMR's Mot. at 9-11. The plaintiffs contend that the promissory notes provided that any repayment was to "be deducted from any earnings payments then due and payable to the plaintiffs." *Id.* The plaintiffs further contend that the promissory notes provided that in the event of the plaintiffs' involuntarily termination without cause,[9] "any payment of principal and interest due upon acceleration as described herein shall be deducted from any earnings payments, contractual severance amounts, payments in lieu of accrued vacation, or other cash incentives

---

[9] According to the plaintiffs, it is undisputed that they were all involuntarily terminated without cause. Pls.' Opp'n to IMR's Mot. at 10.

15

then due and payable" to the plaintiffs. *Id*. Furthermore, the plaintiffs assert that the "Retention Loan Program Term Sheet" executed along with and incorporated into the promissory notes stated that the "Repayment Mechanism" for the retention loans was "[s]olely via cash compensation payroll deductions, unless there is an event of default." *Id.* at 10-11.

These provisions, the plaintiffs argue, make clear that the sole mechanism for repayment of the retention loans was through offsets against owed compensation. *Id.* at 11. The plaintiffs maintain that the promissory notes provided no mechanisms for collection against former employees terminated involuntarily and to whom no further earnings payments or contractual severance amounts would be distributed. *Id.* In light of these provisions, the plaintiffs argue, the court should deny IMR leave to assert a counterclaim seeking repayment of the loans on grounds of futility. *Id.*

IMR responds that the promissory notes did not limit repayment to offsets against owed compensation. *See* IMR's Reply at 3-6. Rather, IMR contends that the failure to make a quarterly payment constituted an "Event of Default," which entitled the noteholder to pursue "all . . . remedies provided at law or equity . . . without limitation." *Id.*, Ex. A at 4. IMR also asserts that the only provision of the promissory notes providing for forgiveness of the retention loans conditions that forgiveness not on the plaintiffs' involuntary termination, but rather on the return of average equity reported in the noteholder's quarterly 10-Q report. *Id.* at 2. In addition, IMR contends that the construction of the promissory note advanced by the plaintiffs is barred by federal regulations prohibiting "golden parachute" payments to individuals affiliated with banks in FDIC receivership. *Id.* at 6-8 (citing 12 U.S.C. § 1821(k) and 12 C.F.R. §§ 359 *et seq.*).

Although the promissory notes plainly contemplate repayment through offsets against compensation owed to the plaintiffs, they lack any provision expressly limiting repayment to

such offsets.  *See generally* IMR's Reply, Ex. A.  Furthermore, the effect of the forgiveness provision in the promissory notes and the "golden parachute" regulations cited by IMR remain unclear and have yet to be fully briefed by the parties.  Because the court cannot, at this stage of the litigation, conclude that the promissory notes bar IMR from seeking repayment from the plaintiffs, the court cannot conclude that IMR's breach of contract counterclaim is futile.  *See, e.g.*, *The Scowcroft Grp., Inc. v. Toreador Res. Corp.*, 666 F. Supp. 2d 39, 43-44 (D.D.C. 2009) (denying the defendant's motion to dismiss the plaintiff's breach of contract claim based on the presence of ambiguities in the relevant provisions of the contract).  Accordingly, the court grants IMR leave to amend its counterclaim to add a claim for breach of contract.

## IV.  CONCLUSION

For the foregoing reasons, the court grants in part and denies without prejudice in part the FDIC's motion to dismiss, grants the plaintiffs' motion to dismiss IMR's original counterclaim and grants in part and denies in part IMR's motion for leave to amend its counterclaim.  An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 3rd day of September, 2010.

                RICARDO M. URBINA
                 United States District Judge